## Case No. 13,585.
SUAREZ v. The GEORGE WASHINGTON.
[1 Woods, 96.] [1]

Circuit Court, D. Louisiana. Feb. 20, 1871.

SHIPPING—BILL OF LADING—FREIGHT—CARRIAGE BY PURSER—BAILMENT.

"A." was the purser of a steamship about to sail from New Orleans to New York. A package marked with his name was delivered to him for which he gave a bill of lading, whereby he agreed to deliver the package to L. in New York, on payment of the value thereof, and in default of payment to return the package to the consignor. The bill of lading indicated that freight had been paid on the package, but no freight was in fact paid or tendered, nor was there any agreement or expectation that freight was to be paid. The package was not placed on the ship's manifest nor stowed with the other freight. "A." was not authorized to sign bills of lading. He delivered the package to the proper person in New York, but neglected to collect its value. Held, that the package was delivered to "A." as the bailee of its owner and was not delivered to the steamship, and that the latter was not liable for its value.

[Appeal from the district court of the United States for the district of Louisiana.]

In admiralty.

E. W. Huntington, for libellant.

T. J. Semmes and Robert Mott, for respondent.

WOODS, Circuit Judge. On the 31st of July, 1868, E. S. Allen, the purser of said steamer signed and delivered the following receipt: "New Orleans, July 31, 1868. Received in good order and condition from P. Manich on board steamer George Washington, one box said to contain 6,000 cigars, marked E. S. Allen, to be delivered to Mr. E. S. Lagram in New York on his payment to Mr. T. Masich of ($660) six hundred and sixty dollars, or in case of nonpayment by him, for me to return said cigars to Mr. F. Masich, New Orleans. (Signed) E. S. Allen, Purser." Freight collected. The libel alleges and the proof shows that Masich was only the agent of libellant in the matter; that the box actually contained 6,000 cigars; that they were the property of libellant; that they were conveyed to New York and there delivered without the collection of said sum of $660. Libellant claims that he has a lien on the steamer for the said sum, and that her owners are jointly and severally liable to him for that amount.

The respondent Moulton answers by way of defense: 1. That Allen did not receive the box of cigars or give the receipt as agent of the owners of the steamer, but undertook to carry said box to New York and deliver it to Lagram as a personal favor to Lagram; and no freight was paid or agreed to be paid thereon, of which Masich had notice when he delivered the box on board the steamer. 2. That the acts of said Allen in the premises were done out of the scope of his employ-

---

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

ment, and without the knowledge and consent of respondents, and that he was not authorized to sign receipts and bills of lading for freight shipped on board the steamer.

This case turns upon the question: Did the shipper deliver the box to Allen as his bailee or did he deliver it to the steamer through Allen acting as the agent of the steamer? Upon this point Allen testifies: That about July 25, 1868, while in New Orleans, he received from Lagram, who was then in New York, a letter asking him to bring on a case of cigars from Mr. F. Masich. About that time Masich applied to him personally in New Orleans; stated that he had received a letter from Lagram informing him, Masich, that he thought he, Allen, would bring on the box, and asked him if he would do so, and deliver the box to Lagram. He told Masich he would. He considered the transaction a personal one between Masich, Lagram and himself. At Masich's request he signed the receipt as purser of the steamer in order that Masich might effect an insurance upon the box. He did not intend to sign the receipt as purser of the steamer, and Masich understood the reason of his so signing. No freight was paid or agreed to be paid on the box. He was not authorized to sign and never did sign receipts or bills of lading for freight except for specie, when he had express orders to do so. No application was made to the office of the steamer's agent, which was customary, and the only place where freight engagements were made. The box was not on the ship's manifest, nor stored with the other cargo of the ship, but put in the bath room as a personal matter of his own.

This testimony is entirely uncontradicted, and there is no evidence whatever to show that freight on the box was ever paid, tendered or agreed to be paid. These facts clearly establish the character of the transaction, and show that the box was delivered to Allen on his own account, and not as agent or purser of the steamer. Masich clearly so understood the transaction; otherwise, why did he apply to Allen personally and inquire whether he would take the box? He must have known that if he desired to send the box as freight, the steamer would take it, and was bound as a common carrier to take it. The circumstances clearly establish that the purpose of the application to Allen was to get the box transported by him as a friend of Lagram, without the payment of freight, and perhaps also to secure his services in collecting from Lagram the price of the package. It is within the observation and experience of almost every one that the officers and passengers on steamers frequently take small packages, for carriage and delivery, as a personal favor to the sender, on which no freight is paid or expected to be paid. It would be a great injustice to the steamer to hold her responsible for the safe delivery of such parcels. There is nothing to distinguish this case from the class just mentioned, except

the fact that Allen signed a receipt as purser. But he testifies he had no authority so to do, and that he did it at Masich's request in order that he might get insurance on the box, and that Masich so understood it.

The case is that Lagram and Masich attempted to get the box carried to New York without the payment of freight. Masich delivered the box to Allen who became his agent or the agent of his principal. Having failed to receive pay for his goods, through the neglect of Allen, he is now seeking to recover their value from the steamer, with which he never made any contract of affreightment, and to which he neither paid, nor agreed to pay, nor tendered any freight. The record further shows that Allen had no authority to sign receipts or bills of lading, and that the steamer had an agent at New Orleans charged with that duty.

The law says that the principal is bound by all the acts of his agent within the scope of his authority, which he holds him out to the world to possess. It is clear that the signing of the receipt was not within the scope of the authority conferred on the purser by his employers. So says the testimony. Did they nevertheless hold him out to the world as having such authority? There is nothing in the record to show that they did either expressly or by recognizing his acts in signing receipts, nor does it appear from the testimony that it is by any means a universal custom or even general custom with lines of steamers having agents, to authorize the purser to sign receipts or bills of lading. The act of the purser in signing the receipt in this case was therefore beyond the scope of his authority, nor had he been held out to the world as having such authority. His principals could not therefore be bound.

The libel must be dismissed at costs of libellant. Decree accordingly.